# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Ronnie Jackson; Joshua Jones; Shane Kringen; Marvin Franco-Morales; Mitchell Osterloh; and Jesse Plentyhorse,<br><br>Plaintiffs,<br><br>v.<br><br>Sharlene Mike-Lopez; Diane Medchill; Kathy Reid; Bruce Reiser; David Reishus; Michelle Smith; and Tom Roy, sued in their Individual capacities,<br><br>Defendants. | Civ. No. 17-4278 (JRT/BRT)<br><br>**REPORT AND RECOMMENDATION AND ORDER** |

Ronnie J. Jackson, OID #239471, Joshua Jones, OID #222266, Shane Kringen, OID # 178338, Marvin Franco-Morales, OID #250893, Jesse Plentyhorse, OID #235901, MCF-Oak Park Heights, 5329 Osgood Avenue North, Stillwater, MN 55082, and Mitchell Osterloh, OID #214579, MCF-St. Cloud, 2305 Minnesota Blvd. SE, St. Cloud, MN, 56304, *pro se* Plaintiffs.

Lindsay LaVoie, Esq., Assistant Attorney General, counsel for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

*Pro se* Plaintiffs Ronnie Jackson, Joshua Jones, Shane Kringen, Marvin Franco-Morales, Mitchell Osterloh, and Jesse Plentyhorse, inmates in the custody of the Minnesota Department of Corrections, bring claims for violations of their constitutional rights under 42 U.S.C. § 1983. (Doc. No. 1, Compl.) Plaintiffs allege claims for unconstitutional conditions of confinement and deliberate indifference to their medical

needs in violation of the Eighth Amendment, denial of due process under the Fourteenth Amendment, and deprivation of religious freedom in violation of the First Amendment. (*See id.*)

Defendants move to dismiss. *See* Fed. R. Civ. P. 12(b)(6); (Doc. No. 61). Also before the Court is a motion for spoliation and an emergency motion for fines and sanctions filed by Plaintiff Jackson. (Doc. Nos. 75, 84.) This Court recommends that the motion to dismiss be granted in part and denied in part. The Court will deny the other two motions.

I.   **Background**

Plaintiffs, according to their Complaint,[1] were incarcerated at MCF-OPH between May 1, 2017 and July 31, 2017. (Compl. 1–2.) During that timeframe, Plaintiffs were housed in MCF-OPH's Administrative Control Unit ("ACU") for violating DOC policies and rules. (*Id.* at 1–2.) Plaintiffs allege that at the end of their segregation sentences, Defendants voted to place them on Administrative Control Status ("ACS") and required them to participate in a mental health treatment program conducted by an unlicensed DOC mental health staff member. (*Id.* at 6.)

Plaintiffs allege that they were in segregation for a minimum of eighty days. (*Id.*) Plaintiffs further allege that while in segregation, they experienced the following conditions that they consider dehumaninzing:

---

[1]   For purposes of this motion, the Court accepts Plaintiffs' allegations as true. *See Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1074 (8th Cir. 2016). The Court also considered declarations filed by Plaintiffs Jackson, Plentyhorse, Franco-Morales, Osterloh, and Kringen in conjunction with the Complaint, and a series of exhibits. (*See* Doc. Nos. 3–7.)

- Twenty-three hours a day in a very small cell (sometimes a complete twenty-four hours);
- Segregation cells with two solid steel doors;
- Only human contact was with DOC staff;
- Only allowed video visitations and not in-person visitations;
- Artificial lights;
- The location of the showers and toilets did not afford sufficient privacy;
- Other segregation offenders were loud due to mental illness;
- Feces and other bodily fluids on the walls and ceilings;
- Cells were generally unclean;
- Laundry returned unclean;
- Mattresses had stains they did not cause;
- Not allowed to attend preferred religious services.

(*Id.* at 6–8.)

Plaintiffs assert that Defendant Sharlene Mike-Lopez was informed about the above-listed conditions. (*Id.* at 8.) Plaintiffs assert that their emotional injuries caused them to experience disrupted sleep, difficulty eating, and difficulty concentrating. (*Id.* at 9.) Also, Plaintiffs could not freely practice their religion, and their mental health symptoms worsened. (*Id.*)

Plaintiffs allege that when they served segregation time in the past, they were returned to the general population when their time expired, but in May 2017, Defendants

3

held ACS hearings to determine if Plaintiffs were going to be placed on ACS status. (*Id.*) The ACS placement hearings were allegedly held outside Plaintiffs' cells and some DOC staff members were physically present and sat outside their cells, while others were just on the phone. (*Id.*) Plaintiff Jones asserts he did not have an ACS hearing, contrary to DOC policy. (*Id.*) Plaintiffs also assert that they should have received psychological evaluations prior to their ACS hearings, but this did not occur, and they did not have psychological evaluations after being placed on ACS status. (*Id.* at 9–10.) Plaintiffs Jackson and Morales assert that Defendants ignored their psychologists' recommendations to not place them on ACS status. (*Id.* at 10.) Plaintiff Jackson asserts that he objected to being placed on ACS status due to a mental disorder, but he received ACS placement regardless. (*Id.*) Plaintiffs Jackson and Morales also allege that because they were placed on ACS status, their mental health symptoms were exacerbated. (*Id.*)

## II.   Motion to Dismiss

Plaintiffs allege claims under the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment, and the First Amendment. (*See* Compl.) Plaintiffs request injunctive relief, declaratory relief, compensatory damages, and punitive damages. (*See id.* at 11–13.) Defendants argue Plaintiffs failed to state a claim on which relief may be granted. (Doc. No. 62, Defs.' Mem. 14–20.) Defendants also argue that Plaintiffs' claims for injunctive relief should be denied because they are brought against Defendants in their individual capacities, and they are moot; Plaintiffs are not entitled to damages under 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act ("PLRA"); and that Plaintiffs cannot recover punitive damages. (*Id.* at 5–6, 21–23.)

4

## A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The court accepts as true all factual allegations, but is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, 'it stops short of the line between possibility and plausibility'" and must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 556–57).

### B. Eighth Amendment

#### 1. Conditions of Confinement

The Eighth Amendment prohibits "cruel and unusual punishments," and requires that prison officials provide humane conditions of confinement. U.S. Const. amend. VIII; *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). However, the Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). A prisoner asserting a conditions of confinement claim must identify the "deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). "[T]he risk that the prisoner complains of [must] be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).

Thus, a conditions of confinement claim based on prison conditions requires a showing of: (1) a deprivation of "minimal civilized measure of life's necessities," and (2) deliberate indifference by prison officials to those basic needs. *Rhodes*, 452 U.S. at 347. "A prison official is deliberately indifferent if she 'knows of and disregards' . . . a substantial risk to an inmate's health or safety." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528–29 (8th Cir. 2009) (quoting *Farmer*, 511 U.S. at 837). "[D]eliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk." *Reynolds v. Dormire*, 636

F.3d 976, 979 (8th Cir. 2011). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842.

Plaintiffs, as noted above, allege that their segregation cells were generally unclean, their laundry was returned unclean, there was blood and feces on the walls, and their mattresses were stained. (Compl. 6–8.) Similar conditions have been the basis for a conditions-of-confinement claim. *See, e.g.*, *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (holding that a prisoner being placed in a cell covered with filth and human waste for a two-year period without proper cleaning supplies constitutes cruel and unusual punishment); *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (finding confinement in "extremely filthy [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipped paint, and old food particles on the walls" was unconstitutional); *Hoskins v. Mezo*, Case No. 14-cv-1427-NJR, 2015 WL 153820, at *3 (S.D. Ill. Jan. 12, 2015) (inmate alleging that he was placed in a cell with feces and blood smeared on the walls, toilet, and pillow, trash strewn about the cell, and food trays infested with bugs "identified unsanitary conditions that support a claim for unconstitutional conditions of confinement"). Plaintiffs allegedly were forced to endure these conditions not for a few hours or days, but for almost three months. *See Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) (explaining that a filthy cell might "be tolerable for a few days and intolerably cruel for weeks or months"); *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994) (explaining that the length of time required for conditions to be unconstitutional decreases as level of filthiness increases). Plaintiffs further allege that they were confined

7

to their cells for twenty-three hours per day, not allowing enough time for exercise. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (finding that a "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened"). Finally, while Plaintiffs' allegations regarding deliberate indifference are sparse, Plaintiffs do allege that Defendant Mike-Lopez was informed about or somehow made aware of the condition of Plaintiffs' segregation cells. (Compl. 8.) Therefore, this Court finds that Plaintiffs have plausibly alleged an Eighth Amendment claim against Defendant Mike-Lopez.

### 2. Deliberate Indifference

The Eighth Amendment also prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on such a claim, a plaintiff must prove that a prison official acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Whether an official was deliberately indifferent requires both an objective and a subjective analysis." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). The objective prong requires the Plaintiff to "establish that he suffered from an objectively serious medical need." *Id.* Under the subjective prong, Plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Id.* For the subjective prong, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008). "The subjective inquiry must show a mental state akin to criminal

recklessness: disregarding a known risk to the inmate's health." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006).

Plaintiffs fail to plausibly allege how any of the Defendants were deliberately indifferent to their medical needs. For example, Plaintiffs allege that being placed in the ACU exacerbated their mental health symptoms. But Plaintiffs do not allege that they told any of the Defendants about their mental or medical health issues or that Defendants knew or should have known about those concerns. *See Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016) (explaining that a prison official is deliberately indifferent to an inmate's medical needs in violation of the Eighth Amendment if she "knows of and disregards a serious medical need"). Instead, Plaintiffs' allegations generically refer to "Defendants" as having violated their rights and seem to imply that Defendants were deliberately indifferent because they are DOC employees. This is not enough to plausibly allege a claim for deliberate indifference. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (affirming dismissal of complaint that "failed to allege facts supporting any individual defendants' personal involvement or responsibility for the violations").

**C.     Due Process**

In their due process claim, Plaintiffs appear to challenge both their placement in segregation (ACU) and the subsequent decision to place them on Administrative Control

Status and require them to participate in mental health treatment. (*See* Compl.; *see also* Doc. No. 87, Pls.' Mem.)

To state a claim under § 1983 for unconstitutional placement in administrative segregation, a prisoner "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Eighth Circuit has held that placement in administrative segregation, "even without cause, is not itself an atypical and significant hardship." *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (finding a prisoner was not deprived of a liberty interest during a nine-month stay in administrative segregation).

To the extent Plaintiffs are alleging that they were placed in segregation for three months without due process, those allegations are insufficient to state a claim for relief. *See Wagner v. Gober*, No. 4:15-CV-1789 CAS, 2016 WL 245409, at *2 (E.D. Mo. Jan. 20, 2016) ("[P]laintiff alleges two placements in administrative segregation, each lasting a little over three months. Under Eighth Circuit precedent, these allegations fail to state a claim for a due process violation."). For similar reasons, Plaintiffs do not plausibly allege that their placement in a treatment program constitutes an atypical and significant hardship. *See, e.g.*, *Cummings v. Darsey*, Civil Action No. 06-5925 (RBK), 2007 WL 174159, at *5 (D.N.J. Jan. 16, 2017) ("Where treatment programs do not result in 'atypical and significant hardship,' a court will not micro-manage the decisions of prison officials with respect to required treatment or educational programs."); *Williams v. Wilkinson*, 51 F. App'x 553, 556–57 (6th Cir. Nov. 15, 2002) (finding that forced

participation in a substance abuse program is not a significant and atypical hardship); *Tinsely v. Goord*, No. 05 Civ. 3921 (NRB), 2006 WL 2707324, at *5 (S.D.N.Y. Sept. 20, 2006) ("Nor do we believe that requiring an inmate to participate in a sex offender treatment program 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484).

Therefore, Plaintiffs fail to state a claim for a due process violation.

**D. Exercise of Religion**

Plaintiffs allege that their placement in segregation violated their rights to freely exercise their respective religions. (Compl. 11–12.) "It is well-accepted that 'prison inmates retain constitutional rights protected by the First Amendment, including the right to free exercise of religion.'" *Native Am. Council of Tribes v. Weber*, 750 F.3d 742, 748 (8th Cir. 2014) (quoting *Fegans v. Norris*, 537 F.3d 897, 902 (8th Cir. 2008)). Prisoners also enjoy the additional protection for religious exercise by institutionalized persons through the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person" is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). To set forth a claim under the Free Exercise Clause and RLUIPA, plaintiffs must demonstrate that the defendant's policies and actions substantially burden their ability to practice their religion. *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 831, 833 (8th Cir. 2009). A substantial burden is one

that significantly inhibits or constrains religious conduct, meaningfully curtails an inmate's ability to express adherence to his faith, or denies an inmate reasonable opportunities to engage in fundamental religious activities. *Van Whye v. Reisch*, 581 F.3d 639, 656 (8th Cir. 2009).

Plaintiffs allege that they were "precluded from taking part of/in any religious practices, including but not limited to Sweat Lodge for the Native Americans, Catholic services for the Catholic, Astru for the Astru practitioner, and feast for the Muslim practitioner." (Compl. 8.) This is at least a plausible allegation of substantial burden. Plaintiffs, however, do not plausibly allege that any of the Defendants were personally involved with allegedly having them placed in punitive segregation, thus burdening Plaintiffs' free exercise rights. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) ("To state a claim under § 1983, the plaintiff must plead that a government official has personally violated his constitutional rights.").[2] Therefore, Plaintiffs failed to state a claim under the First Amendment or RLUIPA.

---

[2]  Plaintiffs do allege that Defendants Mike-Lopez, Medchill, Ried, and Rieshus were "responsible for casting a vote to place the plaintiffs involuntarily in the 'ACS' treatment program," and Defendant Rieser, in his capacity as Deputy Commissioner of the Minnesota Department of Corrections, was "responsible for approving the plaintiffs involuntary placement in the 'ACS' treatment program." (Compl. 3–4.) As discussed above, however, Plaintiffs were placed in ACS after the completion of their time in ACU. This Court understands Plaintiffs' free exercise claim to relate only to Plaintiffs' time in ACU, which is now complete.

### E. Plaintiffs Are Not Entitled to Declaratory Relief, Injunctive Relief, or Compensatory Damages, but have Stated a Claim for Punitive Damages

As stated above, this Court concludes that Plaintiffs stated an actionable conditions of confinement claim under the Eighth Amendment against Defendant Mike-Lopez. The type of relief they may recover, however, should be limited to punitive damages for the following reasons.

First, Plaintiffs request a declaration that the ACU living conditions are unconstitutional, and an injunction ordering Defendants to remedy those living conditions. (Compl. 12–13.) Plaintiffs are not entitled to declaratory or injunctive relief because, as their Complaint makes clear, Plaintiffs are no longer being held in the ACU. *See, e.g.*, *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) ("[A]n inmate's claims for declaratory and injunctive relief to improve prison conditions were moot when he was transferred to another facility and was no longer subject to those conditions."). The possibility that Plaintiffs could be transferred back to the ACU at some point in the future is not enough to maintain a live controversy. *See id.*[3, 4]

Second, Plaintiffs request compensatory damages, but this request is blocked by the PLRA's prohibition against a prisoner receiving compensatory or actual damages for

---

[3] Moreover, injunctive relief against government actors, such as the Defendants, may only be recovered in an official-capacity suit. Plaintiffs sued Defendants in their individual capacities, not in their official capacities. *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("The Eleventh Amendment does not bar official-capacity claims for injunctive relief against state officials.").

[4] Plaintiffs also request injunctive relief in relation to their ACS placement. (*See* Compl. 12.) As discussed above, however, Plaintiffs do not have an actionable claim for relief with respect to their participation in ACS.

mental or emotional distress if the plaintiff does not allege a physical injury. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury or the commission of a sexual act."). The PLRA's physical-injury requirement applies to all constitutional claims, including First Amendment claims. *See Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir. 2012) (recognizing that "the circuit courts are split in their interpretation of § 1997e(e)"); *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004) ("Congress did not intend section 1997e(e) to limit recovery only to a select group of federal actions brought by prisoners. Instead, we read section 1997e(e) as limiting recovery for mental or emotional injury in all federal actions brought by all prisoners.").

Plaintiffs allege that they experienced "sensory deprivation," that the alleged constitutional violations caused them "physical injuries/distress, including but not limited to, being unable to eat, sleep disturbance and other injuries," and "caused the plaintiffs mental injuries, including but not limited to, of suicidal and/or homicidal thoughts, feelings, emotions, or ideations, and/or exacerbation of pre-existing serious mental illnesses." (Compl. 2.) While Plaintiffs use the term "physical injury" and discuss certain ways they were impacted due to the alleged violations, Plaintiffs do not allege that they suffered a separate physical injury. "A straightforward reading of Section 1997e(e) requires that a prisoner cite a physical injury that is separate from mental and emotional injuries he may have suffered. Consistent with this reading, a number of courts have held that a prisoner cannot satisfy Section 1997e(e) by alleging only that he suffered from the

14

physical manifestations of mental or emotional injuries." *Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009) (collecting cases).

Third, Plaintiffs request punitive damages. "Punitive damages may be awarded under 42 U.S.C. § 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Schaub v. VonWald*, 638 F.3d 905, 922 (8th Cir. 2011) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). The standard for "deliberate indifference" is substantially the same as the standard to show "reckless or callous indifference." *See Tennon v. Dreibelbis*, 190 F. Supp. 3d 412, 418 (M.D. Penn. 2016) (collecting cases). Therefore, because Plaintiffs have stated a claim for conditions-of-confinement under the Eighth Amendment, Plaintiffs have also stated a claim for punitive damages with respect to that claim. *See Royal*, 375 F.3d at 723 (stating that § 1997e(e) bars claims for compensatory damages, but not for nominal damages, punitive damages, and injunctive and declaratory relief); *Brown v. Martinez*, Civil No. 3:CV-03-2392, 2007 WL 2225842, at *6 (M.D. Penn. July 31, 2007) ("By its plain terms, § 1997e(e) bars relief for 'mental or emotional injury,' but does not otherwise limit the relief available to prisoners for Eighth Amendment violations."); *id.* at *6 n.8 ("The rule for awarding punitive damages is unaffected by the actual injury requirement.").

### III. Motions for Spoliation and for Sanctions

On September 6, 2018, Plaintiff Jackson moved for "Spoliation" against the Defendants. (Doc. No. 75.) Jackson claims that Defendants have destroyed evidence and legal documentation relating to this lawsuit. (*See id.*; Doc. Nos. 77, 78.) In response,

Defendants explain that none of Jackson's legal property or documents have been destroyed, and after this motion was filed, Jackson was given instructions on how to access his documents. (Doc. No. 80, Affidavit of Victor Wanchena ("Wanchena Aff.") ¶ 8.) Plaintiff Plentyhorse also has access to his legal materials. (*Id.* ¶¶ 9–10.) This motion will therefore be denied.

Plaintiff Jackson, however, filed a follow-up motion on September 26, 2018, an "Emergency Motion for Fines and Sanctions Resulting From Perjury." (Doc. No. 84.) Jackson asserts that defense witness Victor Wanchena committed perjury in response to the Spoliation motion by stating that Plaintiff Jackson "was allowed limited property while in segregation and his remaining personal property was delivered to him when he arrived in B-West." (*Id.* at 1 (citing Wanchena Aff. ¶ 3).) Jackson also argues that Defendants' attorney committed perjury by arguing that in September 2018, DOC staff delivered a portion of legal documents to Jackson's cell. (*Id.*)

Plaintiff Jackson requests sanctions under Rule 11 of the Federal Rules of Civil Procedure. Jackson, however, did not serve Defendants under Rule 5 before filing with the Court as required by Rule 11(c)(2). Moreover, the conduct as described by Jackson is not sanctionable. This motion will therefore also be denied.

**ORDER**

Based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Spoliation (Doc. No. 75) is **DENIED**; and

16

2. Plaintiffs' Emergency Motion for Fines and Sanctions Resulting From Perjury (Doc. No. 84) is **DENIED**.

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss (Doc. No. 61) be **GRANTED IN PART** and **DENIED IN PART**.

Dated: December 20, 2018.   *s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).